**STATE OF WEST VIRGINIA**

*In re* **B.M. and D.M.**

**No. 19-0515** (Mineral County 18-JA-49 and 18-JA-50)

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.C., by counsel Jeremy B. Cooper, appeals the Circuit Court of Mineral County's April 24, 2019, order terminating her parental rights to B.M. and D.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardians ad litem, Kelley A. Kuhn and Meredith H. Haines, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed an abuse and neglect petition against petitioner after B.M. was taken to a hospital to treat a severe full-body rash. The DHHR alleged that petitioner failed to seek prompt medical attention for B.M. as she thought the reoccurring rash was only a "diaper rash." According to the DHHR, medical staff diagnosed B.M. with "delay-of-care neglect." The DHHR also received reports that petitioner made statements that she would hurt herself, the children, or the father of the children. Upon questioning, petitioner admitted to attempting to commit suicide on two prior occasions. Finally, the DHHR alleged that petitioner's drug use negatively impacted her ability to parent the children. After the petition's filing, petitioner waived her preliminary hearing.

At an adjudicatory hearing held in October of 2018, petitioner stipulated to the allegations that her drug addiction negatively impacted her ability to parent the children and that she failed to seek prompt medical treatment for B.M. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, and the circuit court granted the motion. Pursuant to petitioner's case plan, she was required

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

to exercise supervised visitation, participate in parenting and adult life skills classes, regularly submit to drug screening, and seek drug treatment.

In February of 2019, the guardians filed a motion to terminate petitioner's post-adjudicatory improvement period, arguing that petitioner continuously failed drug screens for various illegal substances, did not cooperate with her individualized drug counseling, did not complete inpatient rehabilitation, and continued to abuse drugs despite receiving a Vivitrol shot, which is used to curb addiction.

In April of 2019, the circuit court held the final dispositional hearing. The DHHR presented evidence that petitioner failed to regularly submit to drug screening and "tested positive for numerous different substances throughout the time period of testing from September, 2018 through March, 2019." Specifically, the DHHR worker testified that petitioner produced only three negative drug screens throughout the proceedings and her attendance with individualized drug counseling was inconsistent. The DHHR also presented evidence that petitioner failed to complete adult life skills and parenting classes. Based upon the evidence presented, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that terminating petitioner's parental rights was necessary for the children's welfare. Ultimately, the circuit court terminated petitioner's parental rights by order entered on April 24, 2019. It is from the dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating her parental rights instead of imposing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5), which provides, in part, that

---

[2]The father's parental rights were also terminated. The permanency plan for the children is adoption in their current foster home.

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, [a circuit court may] commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

In support, petitioner argues that she would have fully participated in a post-dispositional improvement period and the circuit court erred by failing to give her the "opportunity to get her drug problem under control without irrevocably severing her parental rights to her children." Petitioner further asserts that, if she had received more time, the children's permanency would not have been affected because they were placed with a relative. Moreover, petitioner argues that the circuit court "gave too little weight to the evidence that [petitioner] was, indeed, attempting to deal with her drug problems."

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and/or neglect, given her untreated addiction and noncompliance during the proceedings. At adjudication, petitioner stipulated that her drug addiction negatively impacted her ability to parent the children and she failed to promptly seek medical attention for one of the children. Despite these admissions, petitioner continuously tested positive for various substances throughout the proceedings, failed to comply with individualized drug counseling, failed to complete an inpatient rehabilitation program, and otherwise failed to progress in the treatment of her drug addiction. Further, petitioner failed to complete the required parenting and adult life skills classes offered by

the DHHR or fully comply with supervised visitation. Clearly, sufficient evidence was presented to find that petitioner failed to follow through with her case plan and that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future.

While petitioner claims that she should have been granted a less-restrictive disposition because she might eventually be able to correct the conditions of abuse and neglect, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the record indicates that the children were under the age of three and needed continuity in care, stability, and permanency, which would be achieved through adoption by their foster placement. Because termination of petitioner's parental rights was necessary for the children's welfare and there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future, we find no error in the circuit court's decision to terminate petitioner's parental rights rather than to employ a less-restrictive dispositional alternative.

Accordingly, the circuit court's April 24, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison